FIRST INTERNATIONAL BANK OF COLUMBUS, NORTH DAKOTA, Respondent, v. A. N. BEISEKER, Appellant.

(175 N. W. 637.)

**Guaranty — surety may counterclaim for release of security to debtor.**
    1. An answer in a suit brought to enforce a guarantor's liability, which

alleges that the creditor released to the principal debtor for an inadequate consideration a chattel mortgage which had been given as security for the debt, states matter available to the defendant in an action by way of counter-claim.

**Guaranty — guarantor not relieved from liability by refusal of creditor to surrender to him obligations upon which he is liable.**

2. Where the obligation of a guarantor of payment had become absolute upon the nonpayment by the principal debtor, he is not relieved from liability by the refusal of the creditor to surrender to him, without payment and for collection, the obligations upon which he is liable.

**Guaranty — guarantor not relieved from liability by failure of creditor bank to apply money on deposit by debtor to debt.**

3. In the circumstances presented in the instant case, it is *held* that the guarantor is not relieved from liability by the failure of the creditor, a bank, to apply in liquidation of the guaranteed debt money which a principal debtor subsequently placed on deposit.

Opinion filed October 29, 1919.   Rehearing denied November 25, 1919.

Appeal from District Court of Wells County, *Coffey,* J.

Modified and affirmed.

*Hanchett & Johnson,* for appellant.

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor without the consent of the guarantor the original obligation of the principal is altered in any respect, or the remedies or rights of the creditors against the principal in respect thereto is in any way impaired or suspended."   Secs. 6668, 6672; Leonhardt v. Citizens State Bank, 76 N. W. Rep. 452, 453; Northern State Bank v. Bellamy, supra; Holmes v. Williams, 53 N. E. Rep. 93 (Ill.).

*B. L. Wilson,* for respondent.

"A guaranty of the payment of an obligation, without word of limitation or condition, is construed as an absolute guaranty."   12 R. C. L. page 1064.

An absolute guaranty is one by which the guarantor is bound immediately upon the principal failing to perform his contract without further condition to be performed.   20 Cyc. page 1398; 149 N. W. 904; Section 6662, Compiled Laws, 1913.

Where a contract is made guaranteeing the payment of an obligation, without any words of limitation or condition that it is an absolute

guaranty, and the legal effect of the obligor becomes absolute upon the failure of the principal to pay. Home Savings Bank of Fremont v. Shallenberger, 146 N. W. 993; Cowine v. Dodd et al. 149 N. W. 904.

The law governing a guaranty of payment and the guarantor's liability thereon has been very clearly established in this state. Citizens Bank of Rugby v. Lockwood et al. 156 N. W. 47; Robert Thorp Co. v. Laughlin, 4 N. D. 167; Fisk v. Stone (6D.) 50 N. W. 125; Greely v. McCoy, 52 N. W. 1050 (S. D.); McConnon & Co. v. Laursen et al, 22 N. D. 604.

Under § 6683, C. L. 1913, there must be explicit notice given that, in case the creditor shall fail to proceed against the principal, the surety will hold himself discharged, to make this defense available. Kennedy v. Flads, 4 Dak. 319 (29 N. W. 667), and cases cited in note at end of case; Bailey Loan Co. v. Seward, 69 N. W. Rep. 58 (S. D.); H. S. Davenport v. State Banking Co. 8 L.R.A.(N.S.) 944, and annotated notes attached thereto.

BIRDZELL, J. This is an appeal from an order sustaining a demurrer to certain paragraphs in the answer on the ground that the matters alleged do not constitute a defense to the cause of action alleged in the complaint. The cause of action is based upon the breach of a contract whereby the defendant and appellant, upon selling his stock in the First International Bank of Columbus, North Dakota, amounting to a controlling interest, guaranteed the payment of the bills receivable. The portion of the contract which is material upon this appeal is as follows: " . . . and in part consideration for the purchase of any payment of said stock I, the said A. N. Beiseker, hereby guarantee to the said First International Bank of Columbus, North Dakota, the payment at maturity of each and every note or other obligation now owned and held by said bank promptly at the maturity thereof, and do hereby agree to pay the same in case said notes or other obligations are not paid to said bank at the maturity thereof, and I do hereby waive presentment, protest, and notice of nonpayment to the said bank of any and all of such notes and obligations as may not be paid at maturity, with interest at the rate of (8) eight per cent from maturity, I, the said A. N. Beiseker, to have twelve (12) months from the date of maturity of any and every unpaid obligation due to said

bank to make payment thereof, and upon payment thereof by me such note or obligation to be turned over and assigned to me by said bank without recourse."

The complaint alleges the nonpayment of notes aggregating the principal sum of $1,375.61. The date of maturity of each of the notes is set forth, it appearing from the allegations that there are three demand notes, dated in the spring of 1915, and that the remainder, twelve in number, fall due either September 1st, October 1st, October 15th, or November 1st, 1915. The portions of the answer to which the demurrer is directed allege that the bank and the purchasers of the defendant's stock exonerated, released, and discharged the defendant from all liability as guarantor by reason of their failure to avail themselves of their full opportunity to collect the notes from the makers in the fall of 1915 and in the year 1916; that if they had used reasonable diligence in the collection of the same they would have been fully paid by the makers, who were primarily liable; that the defendant in the fall of 1915 demanded of the plaintiff a list of the unpaid notes in order that he might use such efforts as he deemed advisable to force the collection thereof, with which demands the plaintiff neglected and refused to comply. Also that in November, 1915, the defendant sent a collector to the bank to get all of the guaranteed paper remaining unpaid, with instructions to go into the country, see the makers personally, and use his best efforts to secure payment, but that the cashier of the bank refused to allow the defendant's collector to have the notes for collection, which refusal resulted in depriving the defendant of his right to enforce payment of the guaranteed paper in the fall of 1915.

In paragraph 5 the defendant alleges as to two notes given by one Conrad Berg, aggregating $285, that the bank failed to avail itself of its right to apply in payment funds which Conrad Berg had on deposit with the bank subsequent to the maturity of the notes in amount more than sufficient to pay them. Similar allegations are set forth regarding a note of North St. Olaf Church for $16.75; and, as to a note of M. A. Maher for $482.60, it is alleged at the time the stock of the defendant was sold the bank held ample security in the shape of a chattel mortgage upon certain hogs belonging to Maher, in Burke county, which mortgage was released by the bank without the knowl-

43 N. D.—29.

edge or consent of the defendant in the fall of 1915 upon the payment of a small amount which was due upon the note, which release operated to deprive the defendant of the benefit of the security previously held by the bank.

The guaranty in the instant case is concededly a guaranty of payment, but the appellant contends that the portions of the answer referred to set forth defenses to the liability sought to be enforced on the ground that the acts alleged discharged the guarantor as a matter of law. It is practically conceded by the appellant that the delay of the plaintiff bank and its failure to take active steps for the collection of the notes when they became due in the fall of 1915 would not amount to a discharge of the guarantor or constitute a defense.

But it is seriously urged that, as to the Maher notes, the waiver and release of the chattel security without the knowledge or consent of the defendant constitute a defense to that part of the cause of action wherein it is sought to recover on the defendant's guaranty of the Maher notes. To sustain this portion of the answer the defendant and appellant relies upon the principle according to which the creditor is required to exercise care in conserving security which he holds for the payment of the debt at the peril of discharging a surety or guarantor to the extent of the damage suffered through the dissipation of the security. (See Scandinavian American Bank v. Westby, 172 N. W. 665.) We are of the opinion that the allegations in this portion of the answer set forth matter which is properly available to the defendant in this action. It is true that the damage which the defendant has sustained, if any, by reason of the facts alleged, might more properly be set forth as a counterclaim, but we are not concerned here with the formality of the pleading,—only with its substance. Under well-recognized principles of law it is the right of the surety or guarantor to demand that the creditor shall carefully utilize or preserve any security he may hold from the principal debtor for the payment of the debt. If the creditor fails to fulfil his obligation in this respect, the surety is relieved to the extent of the damages suffered.

It is also contended that the allegations in paragraph 4, to the effect that the bank refused to furnish the defendant with the list of unpaid notes which he required for his protection, constituted a matter of defense. There is no merit in this contention. Neither was the bank

required to deliver the notes to the defendant's collector. Under the contract the bank was not obliged to transfer the notes, either to the guarantor or the principal debtor, until they were paid. While the guarantor was granted a year's time in which to meet his obligation to the creditor, the obligation was nevertheless fixed and became absolute upon the failure of any debtor to pay his obligation at maturity. Had the guarantor required possession of the notes for his own protection, he could readily have discharged them by making payment to the bank and could then have demanded their transfer under the contract.

With respect to the allegations concerning the failure of the bank to assert what is termed its banker's lien upon the funds of some of the makers of the notes who were alleged to have had money on deposit after the maturity of the notes sufficient to meet them, we are of the opinion that these allegations do not constitute a good defense. The contract contemplates that the purchasers of the stock will continue to operate the bank, and that they would consequently be interested in maintaining the good will of their patrons. To require the bank, therefore, to apply money subsequently deposited by those debtors, subject to general checking, at the peril of discharging an absolute liability which the guarantor had voluntarily assumed and which it was to his own advantage to assume, would tend to deprive the bank of a portion of the benefit contemplated. It is a doubtful proposition in any case whether a surety or guarantor is relieved by the failure of a bank to apply in liquidation of the guaranteed debt money which the principal debtor places on general deposit. (See 1 Brandt on Suretyship, 3d ed. § 487.) But we are satisfied that the guarantor is not relieved by such failure, where the effect would be as above stated.

While upon this appeal it is found necessary to modify the order appealed from, there is no occasion for costs being imposed upon the respondent. That portion of the pleading which is found to state matters of defense should have been separately pleaded as counterclaim. For the above reasons the order appealed from is modified to the extent of overruling the demurrer as to the matters alleged concerning the Maher notes. As so modified, the order appealed from is affirmed. Neither party is entitled to costs upon this appeal.

GRACE, J. (concurring in part and dissenting in part).  I concur in the opinion of Justice Birdzell in the holding that the release by plaintiff of certain chattel security, to M. A. Maher's notes, without the knowledge or consent of the defendant, constitutes a defense or counterclaim to that part of the cause of action wherein it is sought to recover on the defendant's guaranty on the Maher notes, thus re-affirming the principle in this regard, announced by this court in the case of Scandinavian American Bank v. Westby, 172 N. W. 665.

I further concur that the bank was not required to deliver the notes in question in this case to the defendant's collector for the purpose of collection.  From the remainder of the opinion, I dissent.  The defendant sold the plaintiff the notes in question and guaranteed payment of the same at the maturity thereof.  His guaranty was not placed upon the notes, but was contained in a separate contract.  It is immaterial, however, whether the guaranty is on the note or in a separate contract, the legal effect is the same.

The liability of the defendant, under his contract of guaranty, was a secondary one.  The principal debtors were those who owed the notes which defendant guaranteed, and they were the primary debtors.

After the defendant had guaranteed the notes and turned them over to the plaintiff, it became the owner of the notes, and the debtors were primarily liable to the bank.  After the maturity of the notes some of the makers of the notes had money on deposit in the plaintiff's bank which, if applied to the discharge of such notes by the bank, which notes were in the bank at the time when such debtors had deposits therein, as above indicated, would have been sufficient to discharge or partially discharge those notes.

The defendant claims it was the duty of the bank towards him as guarantor to apply the deposits thus in its bank, belonging to any of the debtors, to the discharge of their notes then past maturity.  The plaintiff claims it had no duty in this regard.  It is only fair to say there is, among the decided cases, a minority and majority rule in this regard.  Pennsylvania, Maryland, Kentucky, Wisconsin, and some other states recognize the minority rule, holding that it is the duty of the bank to apply the deposits to the discharge of the note or obligation upon which the surety or guarantor is liable if the debt is directly

due to the bank by the maker of the note upon which the guaranty or surety contract obtains.

The majority rule, it may be conceded, is the reverse. It must be remembered, however, that the reasoning in both the majority and minority rule is not based upon a statutory lien by the bank upon the deposits, but, in either case, is based upon no actual or statutory lien whatever, but upon the right usually claimed by banks to offset any debts which the bank owned and held against the depositor against money or debts which it owed the depositor. In other words, the relation between the depositor and the bank is considered one of debtor and creditor, in which the bank is the debtor, thus owing the depositor the money which is deposited in the bank, and possessing or having obligations of the depositor in the form, for instance, of a promissory note, which is past due and which is owing to the bank. Banks have generally claimed the right to charge such notes, etc., against the deposits of the depositor in the way of an offset; but the majority rule holds that while the bank has this right, it is not required to charge up to the depositor a note owing by him to the bank upon which there is a surety or guarantor on penalty of releasing the surety or guarantor. The rule is a harsh one and is devoid of equity or justice. The minority rule is much the better rule and is based upon justice and equity. It impairs no right of the bank; it compels the debtor to pay a just debt which he alone actually and primarily owed, and thus relieves those whose liability is a secondary one.

It will be seen, from what has above been said, that the majority and minority rule are each based upon the right or duty of the bank to apply the deposits in the manner above indicated, or not to apply it, as the case may be. In other words the rule, either majority or minority, is not based upon a statutory lien.

In this state banks by statute are given a general lien, dependent on possession. Section 6868, C. L. 1913, reads thus: "A bank has a general lien, dependent on possession upon all property in its hands, belonging to a customer for the balance due to him from such customer in the course of the business." Hence, the majority rule above referred to does not apply in this case where there is a statutory lien.

In those cases, there was no statutory lien, nor any lien at all but the mere right claimed by reason of the relation of debtor and credi-

tor of the bank to offset the debt owing from the depositor to it, against the debt owing by the bank to the depositor on account of the debtor's deposit, then in the bank.

The majority rule is also that the creditor shall present the note to the maker at maturity, and, if dishonored, to use due diligence in giving notice to surety; that there shall be no extension of time given without the consent of the surety; that the creditor will apply, in payment of the debt or hold in trust for the benefit of the surety, all securities which he may procure for that purpose by contract or operation of law, and use due care in the protection and care of such securities, so that if compelled to discharge the debt the surety may be subrogated to them.

The majority rule also recognizes that a mortgage, pledge, or lien constitutes security. In this case, the bank had a lien upon the deposits of its depositors by operation of law.

In the case at bar, the plaintiff had security by reason of such lien. It could have charged up against several of the makers of the notes which were guaranteed by the defendant, the amount due upon such notes, having in its banks deposits sufficient for that purpose belonging to them.

Equity and justice required that it should have done so. It was the absolute owner of the notes. The makers of the notes were primarily liable; the defendant was secondarily liable. The plaintiff had a legal right, having the notes in its bank, in its possession, and the deposits by the makers thereof, in its bank in its possession, and the statutory lien thereupon, to charge such notes against the respective deposits, and it was its duty to do so, and defendant should be released from his obligation as guarantor to the extent that the respective deposits were not so applied by the plaintiff, when any of the debtors herein had a deposit in the bank after the maturity of his note, it appearing that plaintiff, at all times in question, was the owner of the notes and had possession thereof.

In view of the statutory lien afforded banks in this state, such lien must be considered a security, and, as such, the defendant was entitled to the benefit of a mortgage or other security of any of the notes which he sold the bank, the payment of which he guaranteed. In this regard, the reasoning and rule applied in the cases which hold to the majority

rule above mentioned sustains this position. The statutory lien of the bank on the deposits of the primary debtors, in the circumstances of this case, amounts to an actual security and enforceable lien. It is made so by operation of law, and is just as much a lien as if it were created by the contract of the parties in pursuance of law. It thus became the duty of the plaintiff to protect such security. This, under the principle laid down in the majority rule above stated. The bank should be held to the same degree of care in the protection of this class of security as any other.

The majority opinion, in part, excuses the negligence of the plaintiff in this regard on the theory that the bank might impair the good will of its patrons if it were required, in the circumstances of this case, to charge, against the deposits, any notes owing by the depositors. Such contention has no merit whatever. The question in this case is not whether the plaintiff's business may or may not be benefited. The main question in this case is: What are the legal rights of the parties as defined by the statutes of this state or principles of law which are based upon justice and equity? The question presented is not one of policy, but of law. It should be decided in accordance with law, justice, and equity.

An extended discussion of the entire subject is contained in a note to 8 L.R.A. New Series, p. 945.